# Hirst's Appeal.

92　491
174　480
92　491
218　70

1. The devisee of land, acquired by a testator subject to a subsisting encumbrance created by a former owner, takes it charged with the encumbrance, without any claim for its satisfaction out of the personal estate, unless the will clearly indicates an intention to charge such encumbrance on the personal assets, or the testator has so dealt with the encumbrance as to make it his proper debt.

2. H. purchased a house, in the deed for which the consideration was stated to be $25,000. The *habendum* recited that the conveyance was "under and subject" to a mortgage of $12,000. The receipt at the bottom of the deed was for $25,000, " being the full consideration." The actual sum paid by H. was $14,000. H. devised the house to his wife, who was his executrix, and in her account she took credit for payments of interest on the mortgage. The court below, on the ground that the personal estate of H. was not liable for the mortgage-debt, disallowed this credit. *Held*, that this ruling was correct.

2. *It seems*, that under some circumstances a revoked will may be offered in evidence to aid in the interpretation of the last will of a testator.

January 20th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Orphans' Court of *Philadelphia county*: Of July Term 1879, No. 78.

Appeal of Mrs. Lydia B. Hirst from the decree of the court dismissing her exceptions to the adjudication of the judge before whom her account as executrix of William L. Hirst, deceased, was filed.

[Hirst's Appeal.]

William L. Hirst died August 30th 1876, leaving a will dated February 22d 1875, wherein he appointed his wife, the appellant, his executrix. By this will he devised to his wife his house and lot on Logan Square in fee-simple, and gave her the personal property therein. The residue of his estate he gave to his wife to apply the net income, one-third to her own use, and the rest in equal shares for the use of his children. The property on Logan Square was conveyed to Mr. Hirst by a deed dated April 16th 1874, the consideration therefor being $26,000, "under and subject nevertheless to payment of a certain mortgage-debt or principal sum of $12,000." The receipt at the foot of the deed was for $26,000, "being the full consideration-money within named."

The executrix filed her final account October 4th 1877, and claimed credit for two payments of half-yearly interest on said mortgage. Mr. Hirst's elder children excepted, and credit for these payments was disallowed by the auditing judge, Hanna, P. J., when the accountant excepted. At the argument of the exceptions, in March 1878, the accountant offered in evidence two original wills of William L. Hirst, prior in date to the will proved. This was for the purpose of aiding in the interpretation of the last will. Of these wills, the material portions will be found in the opinion of this court. The offer was rejected, on the ground that it was made too late and that the evidence was immaterial. The court sustained the exception to the disallowance of the credit, but subsequently ordered a re-argument, when the court, Penrose J., dissenting, dismissed the exceptions and confirmed the report of the auditing judge. From this decree this appeal was taken, the appellant alleging that the court erred in dismissing her exceptions and in rejecting her offer of the wills.

*George Biddle, J. Cooke Longstreet* and *George W. Biddle,* for appellant.—Where a vendor sells land subject to an encumbrance there may arise from the contract of sale, 1. A covenant by the vendee to indemnify the vendor against personal liability for the encumbrance. 2. A covenant with the vendor by the vendee that the latter will assume the encumbrance as his own personal debt.

In the first case the covenant is one between the vendor and the vendee for the benefit of the vendor only, who alone can sue on it; and the covenant to indemnify does not make the encumbrance the debt of the vendee personally, nor render him liable to the encumbrancer directly or indirectly.

In the second case the vendee assumes the debt as his own, and renders himself and his estate liable directly to the encumbrancer, upon which covenant the latter may sue.

The words "under and subject," standing alone, imply a covenant by the vendee with the vendor, only to indemnify the latter,

against liability for the encumbrance : Merriman *v.* Moore, 7 Norris 78.

The encumbrancer may, in all cases, show by evidence, that the vendee has actually covenanted to assume the debt, and has thereby made it binding upon him and his estate.

The assumption of the encumbrance by the purchaser as his personal debt is implied where such assumption is expressly stated as part of the consideration ; and where the consideration stated in the conveyance consists of the encumbrance on the property, together with the cash paid at the sale. To the first of these categories belongs Lennig's Appeal, 2 P. F. Smith 135 ; to the other Hoff's Appeal, 12 Harris 200. This assumption is also implied from a statement in the vendor's receipt, that the encumbrance itself, forms part of the consideration paid for the purchase, or from statements made at the time by the purchaser or other parties to the transaction, showing that to have been his intention : Taylor *v.* Preston, 29 P. F. Smith 436 : Merriman *v.* Moore, 9 Norris 78 ; Campbell *v.* Shrum, 3 Watts 60 ; Moore's Appeal, 7 Norris 450.

The intention of Mr. Hirst to make the mortgage-debt upon the Logan Square property his own, is discovered by the wills, which the court rejected as evidence.

In the first testamentary paper, he directs that his widow shall have a house purchased for herself out of his estate ; by the second (the codicil) he limits this amount to $25,000.

In the third he repeats his intention, that his wife shall have purchased for her, a furnished house, thus showing his intention to have been a continuing one. In April of the following year, he purchased the premises in question for $26,000, thus carrying out his intent. Within less than thirty days, by the codicil of May 14th 1874, he declares, that he has carried out the intention expressed in his (second) will, by having purchased these premises ; and recites that as a reason for revoking the former provision for the purchase of the house, substituting in lieu thereof a devise of the premises to his wife in fee-simple.

*William A. Porter* and *Joseph A. Clay*, for appellees.—The question in this case had been decided against the appellant, in the three recent cases of Moore's Appeal, 7 Norris 450 ; Thomas *v.* Wiltbank, 6 W. N. C. 477, and Samuel *v.* Peyton, 7 Norris 465.

In the first of these cases, the court, commenting upon Hoff's Estate, say, that " in the receipt subjoined to the conveyance, it was stated, that the payment in hand and the mortgage-debt and interest due, and to grow due thereon, to be paid by the said John Hoff, was the consideration for the premises. This is conclusive, and is the ground taken as to this case. The same may be said of the comments on Lennig's Appeal. The decision in Moore's

Appeal amounts to this, that the clause "under and subject," is a covenant of indemnity between the grantor and grantee only, unless there is an express agreement by the grantee to pay the encumbrance, or such an agreement may be implied from the circumstances. This is precisely the ground assumed by the appellees in the present case.

The case of Thomas *v.* Wiltbank, is identical with Moore's Appeal, which is cited in the opinion of the court. And a like citation is made in Samuel *v.* Peyton, as settling that " the conveyance of land, under and subject to a mortgage or other encumbrance, is, of itself, a covenant of indemnity only for the protection of the vendor."

As between the testator and his devisee, there is nothing to show that the devise was more than a gift subject to the mortgage.

The appellees are unable to see any equity or reasonable ground on which the devisee of the mansion house, can be permitted to cast the burden of the encumbrance upon it, on the personal estate of the testator, or upon other real estate devised to his children, subject to the provision for the widow, so far disinheriting the heirs-at-law; nor can we discover any intention to do so in the will.

Mr. Justice TRUNKEY delivered the opinion of the court, March 1st 1880.

It is a settled rule that the devisee of land, acquired by a testator, subject to a subsisting encumbrance created by a former owner, takes it charged with the encumbrance, without any claim for its satisfaction out of the personal estate, unless the will clearly indicates an intention to charge such encumbrance on the personal assets, or the testator has so dealt with the encumbrance as to make it his proper debt. Upon an exhaustive review, Chancellor Kent stated the result of the cases to be, that as to wills, the testator may, by express directions, charge such an encumbrance upon his personal assets, or even without express words, he may do it by dispositions and language that are tantamount; as if, for instance, the continuance of the charge primarily on the land would be repugnant to some of the provisions of the will and defeat them. As to other acts of the purchaser in his lifetime, in order to charge his personal estate as the primary fund, he must make himself, by contract, personally and directly liable for the debt to the owner of the encumbrance: Cumberland *v.* Codrington, 3 Johns. Ch. C. 229. This seems to be the established doctrine in Pennsylvania. In the recent case of Moore's Appeal, 7 Norris 450, the previous decisions are considered, and it is held that the words " under and subject to the payment of a mortgage," standing alone in a conveyance, imply a covenant by the vendee with the vendor, only to indemnify the latter against liability for the encumbrance. The Chief Justice said, " Wherever it

has been construed as a covenant to pay the encumbrance, which can inure to the use of the encumbrancer, and on which he can sue, either in his own name or that of the vendor, there has been an agreement to pay, either express, or implied from the circumstances. Such an implication arises in most cases where there is a sale by a vendor under articles, subject to the payment of the unpaid purchase-money." But in a deed of conveyance, he says, the words "under and subject" import no such thing as a personal liability, and it is unwise to give an arbitrary, artificial meaning to words commonly used in contracts and conveyances, and thus entrap parties into engagements which they had no reason to suppose they were entering. The pivotal fact in Merriman *v.* Moore, 9 Norris 78, was an offer to prove an express agreement by the grantees in the deed to assume and pay the mortgages mentioned therein, and the ruling, as applied to that, is in accord with Moore's Appeal. Both affirm not only that such a contract is good when expressed, but also that it may be implied from circumstances attending and connected with the conveyance of the land.

The deed to Mr. Hirst was in consideration of $26,000, and granted the land, "under and subject, nevertheless, to the payment of a certain mortgage-debt" of $12,000, which clause is in the same words as the corresponding one in the deed in Moore's Appeal. The receipt at the foot of the deed is for "the sum of twenty-six thousand dollars, being the full consideration-money within named." Nothing else in reference to the consideration and its payment is shown by the deed or receipt. In fact, the grantee paid $14,000, and retained $12,000. Had the consideration been named in the deed as $14,000, the transaction would have been substantially as it is now. "The mortgage-debt is always part of the price, unless there be an agreement that the vendor shall take up the encumbrance. The purchaser, wherever he contracts to indemnify the vendor, takes the land *cum onere.* This is the clear understanding of the parties, and the value of the encumbrance will, of course, be deducted from the real value of the land. * * * The only question in all these cases is, whether a right of action does not accrue to the mortgagee where the amount of the mortgage-debt is distinctly marked and separated from the price to be paid to the vendor, and by agreement between the vendor and vendee, is left in the hands of the latter for the use of the mortgagee." Cumberland *v.* Codrington, *supra.* In Moore's Appeal, the consideration named in the deed and receipt was $9500, the debt named in the "under and subject" clause "$8500, and the interest due and to grow due thereon," and the value of the property was $18,000. If the real consideration had been expressed, the mortgage-debt would not have been more distinctly marked, nor would there have been any better reason for holding the vendee personally liable to the mortgagee.

Hoff's Appeal, 12 Harris 200, recognised the true rule, and it was held there was a contract by the vendee to pay the debt upon which the mortgagee could maintain a personal action.   It is said, "Read $26,000 in place of $13,900; $14,000 for $5500, and $12,000 for $8400, and we have the exact statement of the present case."   But that would be a vicious reading—omitting the contract that was in one case and not in the other—for the deed to Hoff was in consideration of $13,900, contained no reference to any mortgage or encumbrance, and in the receipt endorsed thereon, the grantor acknowledged the receipt from Hoff of $5500, which, it was stated, "with a certain mortgage-debt, or principal sum of $8400, made of the same premises by the above-named Abner Elmes to Isaac Harvey, Jr., and the interest due and to grow due thereon, to be paid by the said John Hoff, is in full the consideration for the above-granted premises."   It would have been difficult to say the receipt did not embody an express contract by Hoff to pay the debt.

So, in Lennig's Appeal, 2 P. F. Smith 135, there was a contract by the grantee to pay the encumbrance, set out in the deed and receipt as follows: "In consideration of $20,000 lawful money of the United States, paid, &c., and of the assumption of the said Frederick Lennig of the two mortgages herein afterwards particularly mentioned, being altogether the sum of $57,000;" and, "received, &c., $20,000, the cash consideration therein mentioned, which, together with the assumption of the mortgage-debts of $12,000 and $25,000, is in full consideration of $57,000 above mentioned."   Thus Lennig took upon himself the said debts, one of which he paid in his lifetime.   It was with reference to these facts that the court said, it was certain Lennig made the mortgage-debt his own, and charged it thereby on his personal estate; after having remarked that "an heir, devisee or purchaser taking land already charged with a mortgage, does not *ipso facto* make the debt his own, or subject his personalty in equity to its payment."

To hold that anything in the deed to Mr. Hirst is sufficient to make the mortgage therein described his proper debt, would require a step far in advance of what has heretofore been deemed adequate for such result—a step that would reverse the rule so that the taking of land, under and subject to an encumbrance, would *ipso facto* create a personal liability in the vendee in favor of the encumbrancer.

The appellant proposed to give in evidence, in connection with the deed and will, two earlier wills and codicils in the handwriting of Mr. Hirst, which offer was rejected for two reasons: 1. The evidence was not submitted to the auditing judge; and, 2. It would not affect the construction of the will under which the account arises.   It seems the Orphans' Court were agreed in rejecting the offer; and the dissenting opinion, without allusion to the prior

[Hirst's Appeal.]

wills, rests wholly upon the language of the deed as creating a personal liability on the grantor, adopting the apochryphal doctrine which probably induced the Act of January 12th 1878, Pamph. L. 205. If the proposed testimony was pertinent, and, with the other evidence in the cause, sufficient to show that the testator had made the mortgage his own personal debt, or that he intended, in a clause in the will of doubtful meaning, to charge the encumbrance on the lot devised to his wife upon his personal assets, it ought to have been received and considered. Though, in strictness, not offered in time, it was of such character that its consideration would have created no material delay. Here the arguments were made as if it had been received and it will be so treated. Under some circumstances a revoked will may aid the interpretation of the last will, as a repealed statute may sometimes assist in arriving at the meaning of a subsequent enactment.

Three wills of Mr. Hirst are in evidence, each so well expressed as to be easily understood. The first, dated July 2d 1873, directed that his wife may apply so much of the proceeds of his estate as she may think proper to the purchase of a residence and furniture, the title of the residence to be made to her in fee-simple, and the furniture to be her property. It also bequeathed to her the personal property in his residence and office, committed to her as executor and trustee the control of his estate, gave her one-third of the net income during her widowhood, and, at last, the estate to be equally divided among his children. By codicil, added the next day, he limited the amount to be expended for a residence and furniture to $25,000. October 3d 1873, he made the second will, wherein he authorized his wife to purchase a house and take the title to herself in fee, furnish it, the furniture to be hers, and pay such prices for the same as she may see proper out of his estate; gave her the personal property in his dwelling and office, gave her one-third of the net income of his estate during life, the management of the estate, with right to apportion it among his children in amounts, equal or unequal, in her discretion, and should she die before the time fixed for distribution she may direct by will the apportionment, in equal or unequal amounts, in her discretion. The deed for the lot on Logan Square bore date, April 16th 1874, and nearly a month thereafter, by codicil, he devised said lot to his wife, and revoked the provision for purchase of a house. His last will, February 22d 1875, vests said lot in his wife in fee-simple, gives her the personal property in his dwelling, gives her one-third of the net income of his estate during her widowhood, and directs his estate to be divided finally, equally among his children. These wills have been severally noted because of their differences, that it may be seen what light, if any, each throws on the others, and if there be anything to evidence that the testator

11 NORRIS—32

[Hirst's Appeal.]

took upon himself as his personal debt the mortgage mentioned in the deed.

Mr. Hirst, it is said, was a great lawyer, to whom the whole law on this subject was fully and thoroughly known. Such a man knew what debts were primarily payable out of the personal estate of a decedent, and what encumbrances were a charge on the land taken by an heir or devisee. He knew that the "under and subject" clause in his deed created no personal liability against him in favor of the mortgagee; and no will or codicil contains an expression which indicates his intention to charge his personal assets for payment of that mortgage. Not a word or act shows such dealing with the encumbrance as to make it his proper debt. His last will is too clear and free from ambiguity to permit anything outside to cloud it. That will and the deed leave the encumbrance where the law placed it when he took the land. It is urged that the prior wills evidence that he intended to give his wife a house and not a shell, a house free of charge. Each very clearly shows what he intended when it was made. Had he died leaving the second as his will, its munificence to his wife could not have been shrivelled into the measure of the first; and now the last stands, materially differing in several respects from the second. Upon the point in question; in the first, the price of the house and furniture was limited; in the second, the price was without stint, until the codicil, and then the house was devised without a word to relieve of the encumbrance, but still no limit to the price of the furniture she might purchase; and last, the testator devises the house, and bequeaths the furniture in his dwelling. It seems impossible that he all the time meant substantially the same thing. If he intended to free the lot from the encumbrance, surely he would have so declared.

We are of opinion that there is not evidence that the testator made the mortgage his proper debt, and that his will does not indicate an intention to charge said mortgage-debt on his personal assets.

> Decree affirmed, and appeal dismissed at the cost of appellant.