## Homsher Estate

*Merrill L. Hassel,* for accountant.

*Appel, Ranck, Levy & Appel* and *Windolph, Burkholder & Hartman,* for claimants.

*Mark R. Eaby, Jr.,* for Commonwealth.

BOWMAN, P. J., April 27, 1961.—John Bryson Homsher, also known as John B. Homsher and J. Bryson Homsher, died testate November 11, 1957, having by his last will and testament disposed of his estate, as follows:

"I do give, devise and bequeath to my wife, Mildred E. Homsher, the share of my estate to which she would be entitled under the laws of the Commonwealth of Pennsylvania.

"All the rest, residue and remainder of my estate, I do give, devise and bequeath in equal shares to my mother, Mary B. Homsher; my sister, Margaret J. H. Hassel; and my brother, Joseph B. Homsher, or the survivor of them, except as to my brother and sister, who shall inherit on a per stirpes basis."

Decedent left to survive him his named spouse, Mildred E. Homsher, and no issue. Mary B. Homsher, decedent's mother, Margaret J. H. Hassel, his sister, and Joseph B. Homsher, his brother, all survived him.

Joseph B. Homsher died October 5, 1960, a resident of Berks County. The court was informed that no administration has been raised on his estate.

Decedent's will, dated October 9, 1957, was admitted to probate by the register on November 19, 1957.

Within a period of one year thereafter the surviving spouse filed no election and thus, under section 12 of the Wills Act of April 24, 1947, her failure to file an election is deemed an election to take under the will or an acquiescence in the provisions thereof. . . .

In contention also is the interest of the surviving spouse. On September 19, 1960, Mildred E. Homsher filed a petition requesting the award to her of a spouse's allowance of $10,000. Preliminary objections to the petition were filed on November 25, 1960, on behalf of Mary B. Homsher and Margaret J. H. Hassel. Testimony in connection with this matter was taken at the audit of the account.

Mildred E. Homsher, the surviving spouse, was called as a witness and testified, under objection. We reserved a ruling as to her competency to testify as to matters occurring before the death of the testator. We are now of the opinion that she was a competent witness and so hold. She is not claiming against the estate but under the will. See Thompson Estate, 64 D. & C. 77.

The evidence produced at the hearing revealed, among other things, that decedent and petitioner lived together only infrequently during the period from September of 1952 until August of 1957; that on August 14, 1957, at decedent's request, petitioner accompanied him to Atlantic City, N. J.; that shortly thereafter decedent became ill and was admitted to the Atlantic City Hospital; that on August 30, 1957, while a patient at the hospital, decedent executed a will which is hereinafter more fully discussed; that decedent was thereafter transferred to St. Joseph's Hospital in Lancaster, where he remained until he died on November 11, 1957, having first executed his last will on October 9, 1957.

Pertinent to a determination of the interest of decedent's spouse is that portion of the probated will which reads as follows:

"I do give, devise and bequeath to my wife, Mildred E. Homsher, the share of my estate to which she would be entitled under the laws of the Commonwealth of Pennsylvania."

It is the contention of petitioner that she is entitled by virtue of the quoted language to the allowance of $10,000 in accord with section 2(3) of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §12, as amended, which provides as follows:

"The surviving spouse shall be entitled to the following share or shares:

"(3) No Issue. The first ten thousand dollars in value and one-half of the balance of the estate, if the decedent is survived by no issue. In case of partial intestacy, any amount received by the surviving spouse under the will shall satisfy pro tanto the ten thousand dollar allowance".

The allowance is opposed by decedent's mother and sister on the ground that decedent did not die intestate and that the Intestate Act of 1947 can therefore have no bearing on the issue.

By the language employed in his will, decedent has incorporated therein all of the laws of the Commonwealth of Pennsylvania which purport to measure the share to which the surviving spouse might be entitled, and consideration must therefore be given also to section 8(b) of the Wills Act of April 24, 1947, P. L. 89, as amended, which states:

"(b) Share of Estate. The surviving spouse, upon an election to take against the will, shall be entitled to one-third of the real and personal estate of the testator if the testator is survived by more than one child or by one or more children and the issue of a deceased child or children or by the issue of more than one deceased child, and in all other circumstances the surviving spouse shall be entitled to one-half of the real and personal estate of the testator."

It is to be noted that neither of the above statutory provisions can be wholly controlling of the present situation in view of the fact that decedent did not die intestate, neither wholly nor partially, nor did his surviving spouse elect to take against his will.

Nor are prior cases in this field of considerable value inasmuch as they are for the most part distinguishable on the basis of the language employed by the testator or are based upon statutory provisions no longer in effect. In Morris Estate, 298 Pa. 25, and Carrell's Estate, 264 Pa. 140, the allowance (then $5,000) was allowed, but the wills construed therein had specifically directed that the surviving spouse was to receive the share to which she would be entitled under the applicable *intestate* laws. In Erk's Estate, 311 Pa. 185, the allowance was denied, but the court relied on the fact that the language of the will * made it clear that the surviving spouse was to receive only the minimum share of the estate required by law.

Somewhat more on point is Dougherty's Estate, 117 Pa. Superior Ct. 510, wherein testatrix had bequeathed to her spouse the share of her estate "to which he is entitled under the laws of Pennsylvania in force at the time of my decease." In holding that the surviving spouse was not entitled to the special allowance, the court stated, at pages 512-13:

"We are without authority to apply the provisions of the Intestate Act, unless the will so directs. 'The full share of the proceeds of my real estate and personal property to which he is entitled under the laws of Pennsylvania' is the expression used, and it must control. That does not say, nor can we construe it to say that the husband is entitled 'under the intestate laws.' Taking the will, therefore, as written, what construction is

---

* The will provided: "I give and bequeath to my estranged wife . . . such portion of estate which is required by Pennsylvania Law but not more."

to be put on the words 'under the laws of Pennsylvania?' In case of testacy, if one takes under the will, he gets in accordance with its provisions; if against the will, in the event of no issue, then he gets one-half the estate. In other words, the surviving spouse does not get under the laws of Pennsylvania, in case of testacy, more than one-half the estate, unless otherwise provided in the will."

The Intestate Act then in effect, however, required an actual intestacy in order for the provisions concerning the spouse's allowance to be applicable. Also, the award to the spouse of the special allowance would result in his receiving the entire estate available for distribution, which result the court found to be clearly contrary to the testatrix's intent.

In view of the ambiguity therefore created by the specific language contained in this decedent's will, the court may look to the circumstances surrounding the execution of the will as well as the content of any revoked wills in an effort to ascertain decedent's intent: Conlin Estate, 388 Pa. 483; Williamson Estate, 161 Pa. Superior Ct. 106; Hirst's Appeal, 92 Pa. 491, 497. Unfortunately, the circumstances surrounding the execution of the probated will, as hereinabove recited, shed little light on the immediate problem. It is apparent that decedent and his spouse had been separated for a considerable period of time prior to August of 1957, at which time decedent seemingly attempted to effect a reconciliation, possibly with some knowledge of his failing health. During this period from August until his death in November of 1957, decedent executed two wills, the latter of which is the probated instrument herein concerned. From these facts we are unable to draw any pertinent conclusion.

On the other hand, decedent's prior and revoked will of August 30, 1957, is, in our opinion, most illuminating. The dispositive provisions thereof are as follows:

"I do give, devise and bequeath to my wife, Mildred E. Homsher, that portion of my estate to which she is entitled under the intestate laws of the Commonwealth of Pennsylvania;

"All the rest, residue and remainder of my estate, I do give, devise and bequeath in equal shares to my mother, Mary B. Homsher, my sister, Margaret J. H. Hassel and my brother, Joseph B. Homsher, or the survivor of them, except as to my brother and sister, who shall inherit on a per stirpes basis."

The only material difference between that will and the probated will is that in the former decedent bequeathed to his spouse the share of his estate to which she would be entitled under the intestate laws, whereas in the latter will the word "intestate" was omitted. This fact alone, we feel, would be sufficient to warrant a finding that decedent intended that his spouse should not receive the allowance provided by the intestate laws, since we must presume that decedent had a reason for executing the subsequent will when he knew his former will to be then in existence and the only change made in the later will was the omission of the word "intestate."

In addition to the above, however, is the evidence received through the testimony of Mr. Brown, who, insofar as relative hereto, testified (testimony, page 59) as follows:

"Q. Do you know who dictated and who typed the probated will?

"A. No. I only know this, that some time between the time I was supposed to go to Atlantic City—which apparently was the 30th of August, 1957—and the time of the probated will, I examined 'J. L. B. No. 3'— which is the unprobated will, the Atlantic City will— and discovered the language of the will.

"Q. Which language?

"A. The language as to that portion of my estate

I do give, devise and bequeath to my wife, Mildred E. Homsher, that portion of my estate to which she is entitled under the intestate laws of the Commonwealth of Pennsylvania. Seeing that and having looked up some law, I went to the testator to find out if that was his desire. He said specifically it was not, he only wanted to give her what the law allowed.

"Q. If I understand your testimony, as a result the will prepared by Mr. Hassel in Atlantic City, under instructions from the decedent, you were not satisfied with?

"A. I called the testator's attention to what I considered the legal effect of the Atlantic City will, and then received instructions that it should be changed.

"Q. Did the decedent call and ask your construction of the earlier will?

"A. I can't say that he did. I think, as a result of my being his personal attorney and my determining what was in the Atlantic City will, I called it to his attention, with the result I just gave."

Without regard to Mr. Brown's testimony concerning decedent's remarks to him, it is evident at least from the foregoing that decedent was, prior to the execution of his last will, advised of the probable legal import of his will of August 30, 1957. This lends additional support to our conclusion heretofore set forth that decedent's seemingly dominant reason for executing the will of October 9, 1957, was to eliminate any preference allowed to a surviving spouse under the intestate laws.

In a brief submitted to the court counsel for the surviving spouse stresses the complete reconciliation, after having lived separate and apart because, as stated in the brief, of an "other woman" situation, which was effected on August 15, 1957, between her and decedent and continued to his death, as being expressive of a desire on decedent's part to have her receive the allow-

ance of $10,000. However, the will of October 9, 1957, which was executed after such reconciliation, does not reveal such an intent.

From the foregoing, it is manifest that we have been referred to no case and our own investigation has uncovered none in which the surviving spouse was given the allowance solely on the basis of testamentary language bequeathing her the share of the estate to which she might be entitled "under the laws of the Commonwealth of Pennsylvania." We conclude that the petition of Mildred E. Homsher for a spouse's allowance must be dismissed and the allowance denied.

In accord with Dougherty's Estate, supra, and Erk's Estate, supra, and for the reasons hereinbefore set forth, we shall award to Mildred E. Homsher one-half of decedent's net estate, as the maximum share to which she is entitled. . . .