# May's Estate.

*Courts—Jurisdiction—Supreme and Superior Courts—Amount in controversy.*

Where a creditor of a decedent is awarded a claim in the orphans' court, amounting to more than $1,500, an appeal lies to the Supreme Court, although the legatee appealing has an interest in the fund in controversy to an amount less than $1,500. The amount of the award fixes the jurisdiction.

*Vendor and Vendee—Mortgage—Taking subject to mortgage.*

A vendee of property taken expressly subject to a mortgage, makes the debt his own, and if, on the foreclosure of the mortgage there is a deficiency which the vendor is obliged to pay, he may recover the amount of his loss in an action against the vendee.

In such a case the words "under and subject" are to be construed as a covenant of indemnity for the protection of the grantor, and the liability of the vendee, under his implied covenant, is not simply de terris but is coextensive with the original obligation.

The Act of June 12, 1878, P. L. 205, does not affect the liability of the grantee to his grantor, but only applies to the relations between the grantee and the holder of the incumbrance.

Blood v. Crew Levick Co., 171 Pa. 328, explained and distinguished.

The rule that a vendor may recover from the vendee the amount of a

deficiency does not apply where the vendor and the mortgagee enter into an arrangement by which competition is stifled at a sheriff's sale under the mortgage, so as to place the property in the hands of the vendor for an amount less than the amount of the mortgage. Where in such a case it appears that the vendor was willing to bid up the property to an amount sufficient to pay the mortgage, and that he so instructed his attorney, it will be presumed, when he only bid a nominal amount, that he accepted the property as the full value of the mortgaged debt.

*Vendor and Vendee—Taxes—Liability.*

Taxes on real estate are a personal liability against the owner at the time of the assessment.

Argued Jan. 11, 1907. Appeal, No. 258, Jan. T., 1906, by Celia May, from decree of O. C. Phila. Co., April T., 1905, No. 734, sustaining exceptions to adjudication in Estate of Simon May, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to adjudication.

*George P. Rich,* for appellant.—Where a property purchased by a vendee " under and subject " to the lien of a mortgage created by the vendor has been subsequently sold. by foreclosure proceedings at the instance of the mortgagee, for less than the amount of the incumbrance, the vendor, who, under threat of proceedings on his bond, has paid the difference to the mortgagee, can maintain no action against the vendee to recover the amount thus paid by him: Merriman v. Moore, 90 Pa. 78; Hirst's Appeal, 92 Pa. 491; Blood v. Crew Levick Co., 171 Pa. 328; Kirker v. Wylie, 207 Pa. 511.

An agreement by a bidder at a sheriff's sale of real estate to pay the judgment of another, if the latter would not bid, and permit the former to purchase the property at the sale, is fraudulent and void as to the debtor or his creditor: Slingluff v. Eckel, 24 Pa. 472; Barton v. Benson, 126 Pa. 431; Hay's Estate, 159 Pa. 381; Phelps v. Benson, 161 Pa. 418.

The sale, if legal, has realized the full amount of the incumbrance.

*William E. Caveny*, for appellee.—The claim for taxes for the year 1905, which were assessed on January 1, 1905, was a liability of the estate, which could be enforced against the assets in the hands of the executors: Gimber's Estate, 15 Pa. Dist. Rep. 59.

The owner at the time the taxes were assessed is personally liable for the full year's taxes, even though he parts with the property immediately after the assessment: Hogg v. Longstreth, 97 Pa. 255; King v. Mt. Vernon Building Association, 106 Pa. 165; Building Association v. Webb, 12 Pa. Superior Ct. 545; Theobald v. Sylvester, 27 Pa. Superior Ct. 362.

One who purchases expressly subject to an incumbrance as between the vendor and himself makes the debt his own and assumes to protect the vendor; such assumption is in part or the whole consideration of the conveyance to him: Burke v. Gummey, 49 Pa. 518; Moore's App., 88 Pa. 450; Old Colony Trust Co. v. Transit Co., 192 Pa. 596.

The act of June 12, 1878, does not affect the relations between grantor and grantee, but merely the relations between the grantee and the holder of the incumbrance: Moore's App., 88 Pa. 450; Blank v. German, 5 W. & S. 36; Walker v. Physick, 5 Pa. 193; Keim v. Robeson, 23 Pa. 456; Academy of Music v. Smith, 54 Pa. 130; Taylor v. Preston, 79 Pa. 436; Samuel v. Peyton, 88 Pa. 465.

Blood v. Crew Levick Company, 171 Pa. 328, cannot be considered an authority on this question.

The agreement between Millett and the Alexanders was not fraudulent: Woodruff v. Warner, 175 Pa. 302.

The fact that Millett has become the owner of the mortgaged premises does not estop him from asserting his claim for indemnity: Wolfe's App., 110 Pa. 126.

Opinion by Mr. Justice Elkin, May 6, 1907:

The first question to be determined on this appeal is whether this court has jurisdiction to entertain it. At the audit of the account filed by the executors of the decedent a claim was presented by Charles F. Millett amounting to $2,706.04, with interest. The auditing judge disallowed the claim, but the court in banc, on exceptions filed, reversed the auditing judge and awarded the amount of the claim to the appellee. The

appellant, a legatee under the will of her deceased husband, is only entitled to receive one-third of his personal estate, which would be less than $1,500, in the claim in controversy, even if her contention should be sustained here. If, therefore, the jurisdiction depends upon the interest of appellant in the disputed claim, and not upon the whole amount thereof in controversy, the appeal should be to the Superior Court and not here. The act of May 5, 1899, upon which the question of jurisdiction depends, provides that the Superior Court shall have appellate jurisdiction when any single claim, or any dispute, or any distribution, or other proceeding in the orphans' court, concerning money, chattels, real or personal, or the possession, or title, to real property, is in controversy, provided, however, that "the amount or value thereof really in controversy in any single claim, dispute, or other proceeding, is not greater than $1,500 exclusive of costs." In the present case the subject-matter of the controversy is a single claim for money and is, therefore, within the very language of the act. The question to be determined is whether "the amount or value thereof," for the purpose of jurisdiction, is the amount of the entire single claim, or only that part of it to which the appellant would be entitled if successful on this appeal. We think, and so hold, that the matter in controversy is the whole claim of the creditor, and the decree in the court below fixed the amount for the purpose of jurisdiction. A very different question would be presented if, as in several adjudicated cases, the appeal was from an award to separate claimants and the attempt was made to join their several claims in order to make an amount sufficient to give jurisdiction to this court, as in Jenning's Estate, 195 Pa. 406 and Samson's Estate, 201 Pa. 590. It was very properly held in these cases that the jurisdiction of the appellate court depends upon the amount of each separate interest and cannot be assumed by lumping the claims of several appellants in order to give the jurisdiction to this court. In Prentice v. Hancock, 204 Pa. 128 and Astwood v. Wanamaker, 209 Pa. 103, it was decided that the amount in controversy for purposes of jurisdiction was fixed by the decree or judgment in the court below. Following this rule, it is clear, that the decree in the court below in the present proceeding, awarding the whole claim to the appellee, fixed the amount on which

the jurisdiction depends, and that amount being greater than $1,500, the appeal lies to this court.

A brief recital of the facts will aid in the determination of the question involved on the merits of this case. In 1896, Millett, the appellee here, being the owner of a certain property, executed a mortgage thereon, in the sum of $8,000, to Potts, who, a few days later, assigned the same to the two Alexanders, the holders of the mortgage at the time of its foreclosure. In 1899 appellee sold and conveyed the mortgaged property to May, the decedent, "under and subject" to the lien of the mortgage which had not been paid at the date of the death of May, the owner of the property in 1904, when he died. After the death of the decedent there was a default in the payment of interest and the mortgage was foreclosed by the Alexanders, who obtained a judgment on it in the sum of $8,773.06, caused a levari facias to be issued, and offered the property for sale. About the time of the commencement of the foreclosure proceedings, Millett, the present claimant and original mortgagor, and the Alexanders, the assignees of the mortgage, entered into an agreement which in substance provided that the mortgage should be foreclosed, the property offered at sheriff's sale, and that they, Millett and the Alexanders, should not bid against each other, but that he, Millett, in case there were no other bidders, should be permitted to purchase the property at a nominal price, in return for which he assumed and agreed to pay the full amount of the mortgage, debt, interest and costs to the Alexanders. The executors of the decedent, the widow and the heirs, did not have any notice of this agreement. The property was offered for sale by the sheriff, and, in accordance with the agreement entered into, Millett was permitted to bid it in for $50.00. The day upon which the deed was delivered to him, Millett paid the Alexanders $2,706.76 in cash, or its equivalent, and executed a new mortgage to them on the same property for $6,000, the balance due the Alexanders on their original mortgage. When the account of the executors of the decedent, May, came before the auditing judge for distribution, Millett claimed the $2,706.76, the amount paid the Alexanders, as a creditor of the estate of the decedent, on the ground that said estate, on the implied covenant to indemnify Millett, the grantor in the deed of conveyance made subject to the lien of

the mortgage, was liable to the claimant for the difference between $6,000, the amount of the new mortgage to the Alexanders, the alleged value of the mortgaged property, and the whole amount of the original debt, interest and cost.

The decree of the court below is based primarily on the rule that where a mortgage debt, created by the vendor of real estate, is made part of the consideration to be paid, or assumed by the vendee, the recital in the deed to the vendee that the conveyance is made " under and subject" to the mortgage debt, implies an obligation by the vendee to indemnify the vendor against any liability by reason of that debt, and that the liability thus arising is not simply de terris, but is coextensive with the original obligation. The appellant, relying upon his understanding of the decision in Blood v. Crew Levick Co., 171 Pa. 328, argues that the learned court below erred in so holding. In other words, the contention is that the vendee, May, the decedent, who took his title " under and subject" to the lien of the original mortgage, did not thereby assume an obligation to indemnify his vendor for the whole amount of the original mortgage debt, including interest and costs, but only that the real estate conveyed to him should be held primarily liable for this obligation, and if the real estate thus conveyed failed to produce proceeds sufficient to pay the whole obligation, no liabilty rested on him to make up the deficiency by reason of his implied covenant. If this position is sound law, it will have the effect of overruling a long line of cases in which a different doctrine has been recognized and followed. In Burke v. Gummey, 49 Pa. 518, it was held that a vendee of property taken expressly subject to a mortgage, makes the debt his own, and if, on the foreclosure of the mortgage, there is a deficiency which the vendor is obliged to pay, he may recover the amount of his loss in an action against the vendee. That case followed the rule announced in Campbell v. Shrum, 3 Watts, 60, and recognized the principles stated in Blank v. German, 5 W. & S. 36, and Woodward's Appeal, 38 Pa. 322. Attempts have been frequently made in many later cases to modify or overrule this doctrine. Chief Justice Sharswood in Moore's Appeal, 88 Pa. 450, reiterates the principles upon which the earlier cases were decided by holding that the words " under and subject" import that the vendee takes the land

incumbered, and, at most, that on taking it at an agreed consideration, which includes the incumbrance, he will indemnify the vendor to the extent of that consideration, in the same manner as if it had been paid in cash and so applied at the time. Merriman v. Moore, 90 Pa. 78; Hirst's Appeal, 92 Pa. 491; and Taylor v. Mayer, 93 Pa. 42, adhere to the same rule. Even as late as ·Kirker v. Wylie, 207 Pa. 511, it was held that the words "under and subject," in a conveyance, are to be construed as a covenant of indemnity for the protection of the grantor, and that the liability of the vendee, under his implied covenant, was coextensive with the original obligation. If the rule of these cases is still in force, the contention of the appellant cannot prevail on this branch of the case.

It has been suggested that the Act of June 12, 1878, P. L. 205, strengthens the position of the appellant here, but this suggestion is without force because that act does not affect the liability of the grantee to his grantor, but only applies to the relations between the grantee and the holder of the incumbrance : Lennox v. Brower, 160 Pa. 191. The learned counsel for appellant relies principally on Blood v. Crew Levick Co., 171 Pa. 328, to support his position. It must be conceded that there are some expressions in that opinion at variance with the established rule, hereinbefore referred to, but these expressions are mere dicta, and not controlling in the decision of the questions raised on that appeal. The point at issue there was decided solely on the ground that the grantor's estate had suffered no loss on account of the grantee's failure to pay the mortgage, and that there could be no recovery on a covenant of indemnity until it had been shown that the grantor had suffered a loss. This is a familiar and elementary principle of law, always applicable when a suit is brought for the recovery of a loss on a covenant of indemnity. Mr. Justice WILLIAMS, who delivered the opinion of the court in that case, said : " The land has not been withdrawn from the reach of the holder of the mortgage, so far as the case stated informs us, nor has the vendor, the surety, been compelled to pay any portion of the mortgage debt. It is not easy to see, therefore, how he is entitled to proceed against his vendee either upon the implied covenant, or upon his rights as surety for the mortgage debt." That case was decided upon the equitable rights of the parties, grow-

ing out of a complicated state of facts, and was not intended
to, and did not, overrule the long line of cases in which it had
been uniformly held that the words "under and subject" used
in a deed of conveyance is a covenant of indemnity only as
between the grantor and grantee for the protection of the
former.

It does not follow, however, that because of his covenant of
indemnity the grantee might be held liable to his grantor for
the full amount of the mortgage debt, that his estate can be
held liable under the facts of the present case. As was sug-
gested in Blood v. Crew, supra, the vendor has not shown that
he has suffered loss, and is therefore not in a position to reim-
burse himself from his vendee upon the implied covenant in
the deed of conveyance. In our view of this case, it is a matter
of little importance whether we consider the agreement be-
tween the grantor and the assignees of the mortgage whereby
the former was to bid in the property at a nominal price and
pay the latter in full of all demands on the mortgage, as a legal
fraud upon the rights of the widow and heirs of the decedent,
or only as a convenient arrangement for the purpose of vest-
ing the title in the mortgagor and securing to the assignees of
the mortgage the full amount of the indebtedness due them.
In either situation, the grantor is not in a position to assert a
claim against the grantee on his implied covenant under the
facts of this case. The Alexanders, in order to protect their
own interests, were, in the very nature of things, competing
bidders with the appellee. It was to the interest of the Alex-
anders to see that the property sold for an amount sufficient
to pay the mortgage, together with interest and costs. The ap-
pellee was equally interested to see that the property brought
its full value in order to relieve him from liability on his bond.
If the bidding had been in open competition, the reasonable
inference would be, that the property would have sold for an
amount sufficient to discharge the whole obligation. Indeed,
this seems to have been the understanding of the parties them-
selves. Millett, the appellee, in his testimony before the audit-
ing judge clearly indicates that he was willing to take the
property at an amount sufficient to pay the entire indebted-
ness. He testified as follows: "I believe that the mortgage
was foreclosed, and we authorized Mr. Caveny as our attorney

to attend the sheriff's sale and bid the property up to cover the amount of the mortgage if there were any other bidders." Here, then, we have the express declaration of the appellee himself that he was willing to have the property bid up to an amount sufficient to pay the mortgage and he so instructed his attorney. When, therefore, he took the title to the property, only paying a nominal price for the same, the irresistible conclusion is that he accepted the property as the full value of the mortgage debt, and if so, he can assert no claim against the estate of the decedent on the implied covenant to protect him against loss. The learned court below based its ruling on the theory that the property was only worth $6,000, the amount of the new mortgage, and that the loss suffered by the claimant was the difference between the original mortgage and this sum. We do not see that the arrangement by which the appellee paid the Alexanders the indebtedness due them, that is to say, $2,706.04 in cash, and a new mortgage for $6,000, has anything to do with the case. At most, that was an arrangement for the convenience of the appellee, through which he was permitted to pay a certain amount in cash, and to secure the balance due on his obligation, by the execution of a new mortgage on the property. The cash paid and the new mortgage made up the original mortgage debt, together with interest and costs thereon, and this is what he undertook to do in his agreement concerning the foreclosure of the mortgage. We therefore hold that the claimant has not shown that he had suffered any loss in the transaction, and therefore he is not in position to assert a claim against the estate of the decedent.

The estate is clearly liable for the taxes. They were assessed against the property before the title had been divested by the sheriff's sale, and under the authority of our cases such taxes are a personal liability against the owner at the time of the assessment: King v. Mt. Vernon Building Association, 106 Pa. 165.

The decree is therefore reversed and the record remitted to the court below in order that the award can be modified in accordance with this opinion; costs to be paid out of the estate.