## St. Elizabeth's Building & Loan Association, etc., v. Haines et al.

*George H. Detweiler*, for plaintiff.
*Benn Davis*, for defendants.

KUN, J., May 14, 1935.—This case has been argued before us as though decedent had been the holder of free shares, the contention being made that on her death her membership in the association terminated and that though subsequently the association was obliged to merge with other associations, the executor of the decedent was entitled to have the value of decedent's shares as of the time of her death rather than as of the time of the merger.

It is unnecessary for us to decide what the rights of

an executor would be in such circumstances. We would be inclined to hold in line with the recent trend of decisions in building and loan association cases, that the death of a member could, at most, be considered no more than an involuntary withdrawal, and if before the claim was liquidated to the point of a judgment, the association became insolvent, and on that account was obliged to go into a merger with other associations to prevent liquidation, decedent's representative could not collect more than the value of the decedent's shares as of the time of the merger: Weinroth, Executrix, v. Homer B. & L. Assn., 310 Pa. 265.

While on the death of an owner of free shares the obligation to pay the monthly instalments may cease, and no fines may be imposed on account of their nonpayment, according to the cases cited by the defendant, there can be no such termination of the membership obligation when the member has borrowed money from the association and is indebted to it at the time of his death. In the case before us, the decedent was not the holder of free shares but was a borrower from the association on a mortgage loan, her shares of stock being assigned to the association as collateral security for the loan. Obviously, she could not in her lifetime "withdraw" the value of her shares of stock from the association. The only thing she could do would be to pay up her mortgage loan, and at that time ask to have credited the value of her shares of stock. Following the deceased mortgagor's death, her executor, though not having qualified as such, merely asked the secretary of the association for a statement showing what would be required to pay off the loan. The secretary gave him such a statement which, on its face indicated that it was good only until a certain time, that is, the next monthly meeting. The figures on this statement were based on the supposed value of the shares as carried on the books which were in turn based on assumed values of mortgage loans and other securities held by the as-

sociation. No doubt had the mortgage loan been paid off at the time and the credit shown on the statement taken, that would have ended the matter. However, the mortgage loan was not paid off but continued to run on. Sometime thereafter it became necessary for the association to merge with two other associations in order to continue their existence, in connection with which merger the value of the shares of stock of the associations was properly ascertained and used as a basis for the merger, all of which appears in the record of this case.

The merged association filed suit in this case by issuing a sci. fa. sur mortgage on July 21, 1933, showing a credit thereon of the value of the shares of stock as of the date of the merger, which was all the value the merged association received. After allowing this credit, the balance which appeared to be due on the mortgage loan was $1,939.35. The executor of the deceased mortgagor defended on the ground that he was entitled to settle the mortgage loan on the payment of $561.75, the amount on the statement given to him by the old association as of May 15, 1932. The decedent never was a member of the merged association, and we fail to see how it can account to the decedent's estate for more than it received: the value of her shares as of the date of the merger: Weinroth, Executrix, v. Homer B. & L. Assn., supra; Educational Society of Yozgad, Inc., v. Gordon, etc., 310 Pa. 470.

It is quite clear to us that in paying his debt to the association, a borrowing stockholder cannot receive credit for the value of his shares in any greater amount than the value as ascertained to be when the loan is actually paid off regardless of the figures which might appear on a statement given to him for information sometime prior thereto. We do not see how there can be a different rule because the borrower may have died.

We have here the case of a mortgage loan obtained by

the deceased in the usual form of bond and mortgage which in terms requires the continuation of the payments on the shares of stock pledged as collateral for the loan, this obligation extending to the obligor's executors or assigns. The death of the mortgagor and obligor does not terminate his contractual liability which continues until the loan is paid off, and to reiterate, when the loan is paid off, the executor or legal representative of the deceased obligor cannot claim a larger credit than the value of the shares at that time.

The position of the defendant amounts to a contention that on the death of the mortgagor, the association was compelled to appropriate the value of the shares on account of the mortgage loan and reduce it by such value; but payments on account of shares are not ipso facto payments in reduction of the loan and the association is not obliged to make such appropriation in the absence of specific agreement to do so: Green et al. v. Second Allegheny Bldg. Assn. et al., 311 Pa. 305. There never was an appropriation here. In fact, the mortgage required by its terms the monthly payment on the full number of shares assigned as collateral for the loan until the loan was paid off.

We have entirely ignored the fact that the executor signed a warrant of attorney authorizing his assent to the merger, because he said he did so merely as a "favor". We have treated the case as one of a nonassenting stockholder; yet if it were necessary to our decision in the case, we would hold that a warrant of attorney under seal, where there is no claim of fraud, accident, or mistake in procuring it, unrevoked and acted upon, cannot thereafter be impeached on the ground that it was executed as a "favor". No doubt many proxies and warrants of attorney in connection with corporate business are executed as "favors" to someone. That is no reason for vitiating them after they have been acted upon. However, as we have stated, we have treated this case as if the executor

had not signed a warrant of attorney and had not assented to the merger.

We find no merit in the defendant's contention.

The motion for new trial is overruled.