Second Avenue Traction Company, for use, *v.*
United Traction Company of Pittsburgh.

Argued October 6, 1937.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles Denby, Jr.,* with him *D. A. Reed,* of *Reed,
Smith, Shaw & McClay,* for appellant.

*John M. Reed,* with him *Ernest Frey,* for appellee.

OPINION BY MR. JUSTICE STERN, November 12, 1937:

This case calls for the construction of a written agreement between United Traction Company of Pittsburgh and Pittsburgh Railways Company, dated December 30, 1901. It provided that Pittsburgh Company was to maintain and operate certain railway lines of United Company for a term of five years, and thereafter until the agreement should be terminated by three months' notice from either party. The paragraphs vital to the determination of the question involved are as follows:

"Pittsburgh [Pittsburgh Railways Company] agrees to pay all expense of operation and ordinary maintenance of the lines of railway leased, owned and operated by United [United Traction Company of Pittsburgh]; also to pay all State, County or Municipal taxes assessed against United or which by any present or future law or by contract United may be required to pay; also to pay all interest upon loans and all rentals which United may be required to pay; also to pay current dividends upon the preferred stock of United at the rate of five (5) per cent per annum; also to pay a dividend upon the common stock of United at the rate of one (1) per centum per annum from July 1st, 1902.*

"IN CONSIDERATION OF WHICH United agrees that Pittsburgh shall take possession of the railways, power plants, shops, cars and personal and real property, leased, owned and operated by United, that Pittsburgh shall operate said railways and property with full freedom, observing, however, the obligations imposed upon United by law or by contract.

"IN CONSIDERATION WHEREOF United agrees that during the term hereof Pittsburgh shall receive all of the earnings, rentals, dividends upon stocks owned and receipts of every kind received by United or to which it may be entitled during the term hereof.

---

* The provision in regard to the dividends on the preferred and common stock was later cancelled by agreement.

". . . while Pittsburgh shall pay the expenses of ordinary maintenance of the railways and property of United, United shall provide the funds for extraordinary repairs, improvements, extensions, enlargements and betterments of the lines of railway and property operated by Pittsburgh hereunder."

In 1894 Second Avenue Traction Company had executed a mortgage on its lines in the sum of $2,500,000, securing bonds of that amount, and in 1897 had conveyed all its right, title and interest in and to its lines to United Company, which agreed to assume and pay at maturity all of the obligations of Second Avenue Traction Company. These bonds not being paid, useplaintiff Samuel H. Putnam, who owned a large number of them, obtained judgment in an action against United Company for the amount of the principal, and caused a writ of attachment execution to issue against Pittsburgh Company as garnishee. Interrogatories and answers were filed and the court below granted judgment thereon in favor of plaintiff and against garnishee. This judgment was not claimed nor entered upon any admission, in the answers, of sums due to defendant by garnishee arising from its contractual obligation to pay taxes, interest on loans, rentals, or expenses of operation and maintenance, but upon the theory that under the agreement between defendant and garnishee the latter was obligated to pay the *principal* of all of the indebtedness of United Company.

The agreement of December 30, 1901, was not a conveyance to Pittsburgh Company of any title of United Company in the railway lines. It was merely an agreement by which United Company turned over *possession* of the lines to Pittsburgh Company for the purpose of operation. It was to be in force for only five years and thereafter terminable by either party on three months' notice. One would scarcely expect to find in such an agreement a provision whereby the operating company would assume liability for a large capital indebtedness

of the owning company, and, as a matter of fact, no such provision appears. The obligations on the part of each company were clearly and specifically enumerated. United Company agreed that Pittsburgh Company should, *during the term,* receive the earnings and receipts, and, on the other hand, Pittsburgh Company agreed to pay the expenses of operation and ordinary maintenance, taxes, interest upon loans and rentals. It is obvious that there was in contemplation only items of current receipts and expenses, and not of capital assets or funded liabilities. It is not likely that Pittsburgh Company would have obligated itself to pay the principal of the bonded indebtedness out of a current net income to be received during a period which might not last longer than five years, nor that an agreement providing for the payment of expressly enumerated items, such as taxes, rentals and interest upon loans, would have omitted and left to inference or implication a duty to pay the *principal* of loans if it was intended by the parties that such an obligation was to be imposed.

Plaintiff relies upon the words "observing, however, the obligations imposed upon United by law or by contract." It is apparent that this phrase, occurring in a paragraph dealing only with the operation of the railways by Pittsburgh Company, is nothing more than a limitation upon the immediately preceding grant of "full freedom" with which Pittsburgh Company was to be allowed to operate, and that the obligations "imposed upon United by law or by contract" refer to those connected with the physical operation, such as ordinances, franchises and operating agreements, if any, with other companies. The very use of the word "observing" as distinguished from the word "pay," which occurs throughout the preceding paragraph with regard to taxes, interest and rentals, emphasizes the difference in the nature of the obligations to which these words respectively refer.

This interpretation of the agreement makes it unnecessary to discuss other questions raised by appellant.

The order of the court below making absolute the rule to show cause why judgment should not be entered against garnishee is reversed.