Penn State Construction Company, Appellant, *v.* Newkirk Building & Loan Association.

Argued October 7, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Isaac Ash,* for appellant.

*Irwin Apfel,* with him *David Bortin,* for appellee.

OPINION BY KELLER, P. J., December 8, 1942:

The defendant, Newkirk Building and Loan Association, on November 19, 1934, was the owner of property at 2625 West Girard Avenue in the City of Philadelphia, having purchased it at a sheriff's foreclosure sale upon a second mortgage held by it. The Family Society of Philadelphia was the holder of a bond given eleven years before by Samuel Blackman to Alphons J. Reiner, secured by a first mortgage of Blackman to Reiner covering said premises. A balance of principal of $5400 was due and payable on this bond and mortgage on November 19, 1934. On that date a *mortgage extension* agreement was entered into between the mortgage holder, Family Society of Philadelphia, and Newkirk Building and Loan Association, the then owner of the mortgaged premises, by the terms of which the owner of the premises agreed, (1) That the balance principal of the said bond would not be paid, or tendered to be paid by the obligor or owner of the mortgaged premises for the term of three years from the third day of October, 1934. (2) That the interest to be paid on said principal sum due on said bond from and after

the third day of October, 1934, until the expiration of the term above specified [that is, for three years from October 3, 1934] should be at the rate of five per centum per annum, payable on the third day of April and October in each and every year ...... (3) To keep the buildings erected upon the lands conveyed in said mortgage insured against loss or damage by fire in the sum of $5400, and assign the policy or policies to the mortgage holder. "(4)[1] The party of the second part [the owner] does hereby agree, ~~assume and covenant~~ to make prompt payment of the interest, ~~and principal of said Bond so secured~~, when and as the same shall respec-·tively fall due together with all taxes and water rents assessed", and, on or before the first day of December, to produce to the mortgage holder receipts for all taxes and water rents, etc.

The mortgage holder, on its part, agreed (par. 6) that it "will not demand payment of the balance principal of said bond during the said extended term, provided the interest be paid semi-annually within thirty days after the same shall have become due and payable and receipts for all taxes and water rents assessed ...... shall have been presented to it before the first day of December of each and every year, and the buildings thereon be kept satisfactorily insured against loss or damage by fire for the benefit of the holder of the mortgage, and all other provisions contained in said Bond and Mortgage, as well as in this agreement, be complied with in all respects by the party of the second part, [the owner]".

The agreement contained a further clause: "(7) All the terms, conditions, stipulations and provisions contained in the said Bond and the accompanying Warrant of Attorney and in the said Mortgage not inconsistent herewith are to remain in full force and effect."

---

[1] This clause is given just as it appears, with the words deleted, as in the agreement.

Newkirk Building and Loan Association continued to own the property until August 13, 1938, when its title was divested by a sheriff's sale under the first mortgage. On May 13, 1938 Family Society of Philadelphia assigned the said bond and mortgage to Penn State Construction Company, which on August 4, 1938 brought this action of assumpsit against Newkirk Building and Loan Association to recover the interest alleged to be due on said mortgage from October 3, 1937 to August 3, 1938.

The sole question involved in the appeal is, Did the extension agreement impose on the owner of the premises—who was not the mortgagor—personal liability to pay the interest on the bond and mortgage after the expiration of the extended term—October 3, 1937.

The court below, in entering judgment non obstante veredicto for the defendant, held that it did not. We agree with that conclusion.

The defendant—owner of the real estate—was not the maker of either bond or mortgage. While it had acquired title to the premises subject to the mortgage, it had no 'personal' liability to the holder of the mortgage,[2] or any liability at all upon the bond, except such as it expressly assumed under the extension agreement, and that, in our opinion, was restricted to the payment of interest at five per cent during the period of extension,—three years from October 3, 1934. The interest referred to in clause (4) of the mortgage extension agreement related only to that provided for in clause (2). The agreement was not one-sided—it was

---

[2] Defendant's purchase at sheriff's foreclosure sale imposed no liability upon it to pay the principal or interest of the first mortgage: *Ryon's Est.*, 318 Pa. 171, 176, 178 A. 133; *Fair Oaks B. & L. Assn. v. Kahler*, 320 Pa. 245-256, 181 A. 779; *Phila. Saving Fund Society v. Stern*, 343 Pa. 534, 537, 23 A. 2d 413. See also, *Orient B. & L. Assn. v. Freud*, 298 Pa. 431, 435, 148 A. 841; *Green v. Allegheny Bldg. Assn.*, 311 Pa. 305, 310, 311, 166 A. 865; *May's Est.*, 218 Pa. 64, 67 A. 120.

to the advantage of both parties. The owner of the real estate was given three years within which it could work out its problem, free from any threat of foreclosure, provided only it paid the interest and taxes and water rents, and the insurance premium regularly, as provided in the agreement. The holder of the bond and mortgage was reasonably sure of its interest being paid during that period, and that its mortgage lien would not be subordinated to unpaid taxes and water rent; if the owner defaulted in its agreement the mortgage could be foreclosed and the owner's personal liability under the extension agreement enforced; and if the real estate market should materially improve during the three year period there was a fair chance that the principal of the mortgage might be paid off or reduced to an amount which would make it a safe and secure investment.

By the deletion of the words assuming payment of the principal of the bond from the agreement, the owner of the premises expressed, in the most emphatic way possible, its refusal to assume any liability on the bond or mortgage beyond that clearly and definitely set forth in the agreement.

In our opinion the case is ruled in favor of the defendant, appellee, by the decision of this court in *Real Estate-Land Title & Trust Co. v. William Cohen B. & L. Assn.*, 130 Pa. Superior Ct. 207, 197 A. 511. We there held that a written agreement made by the defendant, the holder of a second mortgage on premises of one Glynn, with the plaintiff, the holder of the first mortgage on said premises, whereby in consideration of the extension of the first mortgage for a period of three years from May 18, 1929, the defendant agreed to indemnify the plaintiff to the extent of $2500 against default by Glynn, the defendant did not guarantee the *payment of the principal sum nor any loss from nonpayment of interest after the expiration of the extended*

*period, May 18, 1932.* The language of the agreement in that case, (see p. 209), was similar in some respects to that used in the present agreement. The condition of the obligation assumed by defendant was "that if the mortgagor above referred to, Benjamin Glynn, does well and truly pay or cause to be paid to the above named obligee, interest on the said obligation as and when the same becomes due and payable, as provided under the terms of the bond and mortgage held by The Real Estate-Land Title and Trust Company, and does produce to the said company tax and water rent receipts which are or may be assessed against the said premises, said receipts to be produced on or before the first day of September of each year during the term hereof, and further, keep the building mentioned in the said mortgage insured against any loss or damage by fire for the benefit of the mortgagee in an amount not less than two thousand dollars, in a company satisfactory to the said mortgagee, and if the above mentioned mortgagor, Benjamin Glynn, shall perform or cause to be performed all other stipulations contained in the said bond and mortgage until such time as the same shall become due, then this obligation to be void; otherwise to be and remain in full force and effect."

Speaking through Judge JAMES, we said: "There is nothing in the agreement in reference to the payment of the principal sum. The provision relating to the performance of 'all other stipulations contained in the said bond and mortgage' does not include the payment of principal since the liability for the performance of those stipulations was to continue only 'until such time as the same [the bond and mortgage] shall become due.' If it were intended to bind the defendant to pay the principal, it would seem that its payment would have been expressly provided for as was the payment of taxes, water rent, interest and

insurance. See *Second Ave. Traction Co. v. United Traction Co. of Pitts.*, 328 Pa. 257, 260, 195 A. 25. It should be noted in this connection that no part of the principal sum became due until May 18, 1932. During the period of the extension, which terminated on May 18, 1932, there was no failure to comply with the conditions of the collateral bond. The plaintiff's statement of claim alleged that interest from November 18, 1935 has not been paid by the mortgagor. This default occurred three and a half years after the expiration of the extension period. This can scarcely be termed a default within the meaning of the agreement since the agreement was that defendant was to be bound for the performance of the 'stipulations contained in the said bond and mortgage until such time as the same shall become due'; i.e., May 18, 1932. It also appears from the agreement that tax and water rent receipts were to be produced on the first day of September 'of each year during the term hereof.' It does not require the production of receipts after the expiration of the terms of the agreement. It is clear, therefore, that the agreement did not contemplate liability for default after May 18, 1932, and the pleadings do not indicate any default prior to or at that time."

*Fidelity-Phila. Trust Co. v. Land Title Bank & Trust Co.*, 326 Pa. 262, 192 A. 121, was an action brought by the holder of a mortgage on real estate against the registered owner of the land—title to which had been acquired after the giving of the mortgage—for taxes assessed during the latter's registered ownership, which the plaintiff had to pay to perfect title obtained at the sheriff's foreclosure sale on the mortgage. In Philadelphia taxes are a personal liability against the owner at the time of the assessment: *May's Est.*, 218 Pa. 64, 67 A. 120; *Penna. Co. Trustee v. Bergson*, 307 Pa. 44, 51, 159 A. 32; and the case was decided on that legal principle. But it so happened that the term of the

plaintiff's mortgage had been extended for a period of three years from September 28, 1931, under an agreement between plaintiff and defendant very like the one in our case. The fourth clause, which read: "The party of the second part [the owner] hereby guarantees and covenants to make prompt payment of the interest and the principal or the balance of the principal of said bonds so secured, together with all taxes assessed and to maintain fire insurance as aforesaid," was stricken out prior to the execution of the agreement, and a rider was attached in lieu thereof which read as follows: "This agreement is executed by Real Estate-Land Title and Trust Company only as trustee under a deed of trust and its liability hereunder is limited as trustee as provided under said deed of trust and no liability by it in its corporate capacity is assumed hereby."

The extension agreement provided for the payment of interest at the rate of 6%, that the principal would not be paid or tendered for three years after August 28, 1931, and that plaintiff would not demand it during that term "Provided, *the interest be paid semi-annually as the same shall become due,* the receipts for all taxes assessed on the mortgaged premises shall have been presented to the holder of the said bond and mortgage on or before the first day of September of each and every year, the buildings thereon to be kept insured for the benefit of the said holder thereof for such an amount, for such period, and in companies satisfactory to the said holder thereof, *and all other provisions contained in said bond and mortgage be complied with in all respects by the said party of the second part."* Paragraph 5 provided *"All the terms, conditions and provisions contained in the said bond and mortgage not inconsistent herewith are to remain in full force and effect."* (Italics supplied.)

Construing this agreement, Mr. Justice LINN, speaking for the Supreme Court, said: "The papers show

clearly that neither of the parties thought it was re-
leasing the statutory liability for taxes. This is con-
sistent with the 'rider' which was properly construed
by the learned court below as applying only to obliga-
tions expressly assumed in this document by the appel-
lant; or, stating it differently, *that appellant should
not be liable to pay either principal or interest."* (Italics
supplied).

In all the cases cited and relied on by appellant[3]
there was an express assumption by the owner of the
premises of the payment of the *principal* of the mort-
gage. The language employed for such a covenant
cannot be applied against one who carefully limited
his liability to the interest accruing during the ex-
tended period.

The seventh clause of the agreement imposed no
personal liability on the owner. It only provided that
the terms, conditions, stipulations and provisions con-
tained in the bond and mortgage, not inconsistent with
the extension agreement, were to remain in full force
and effect—that is, that the mortgage holder's rights
against the original obligor and mortgagor should not
be affected by the extension agreement. This defend-
ant was not a party to either the bond or the mortgage,
and its agreement that the terms, conditions, provi-
sions, etc. of the bond and mortgage, in so far as not
inconsistent with the extension agreement, were to

[3] *Bennett v. Rittenhouse B. & L. Assn.*, 313 Pa. 391, 169 A.
757; *Germantown Trust Co. v. Emhardt*, 321 Pa. 561, 184 A. 457;
*All Wyoming B. & L. Assn. Case*, 333 Pa. 250, 4 A. 2d 156; *First
Friday B. & L. Assn. Case*, 333 Pa. 254, 4 A. 2d 148; *N. Y. Life
Ins. Co. v. Brith Achim B. & L. Assn.*, 333 Pa. 256, 4 A. 2d 528;
*Penna. Co. v. Lebanon B. & L. Assn.*, 337 Pa. 316, 10 A. 2d 418;
*Northern Trust Co. v. Phila. Wholesale Drug Co.*, 333 Pa. 386,
5 A. 2d 193; *Greater Adelphia B. & L. Assn. v. Trilling*, 121 Pa.
Superior Ct. 469, 183 A. 651. See also, *Lowry, Trustee v. Hensal's
Heirs*, 281, Pa. 572, 127 A. 219.

remain in full force and effect, was not an assumption of any personal liability by it.

Nor does the reference at the close of the sixth paragraph of the extension agreement (supra) that "all other provisions contained in said Bond and Mortgage, as well as in this agreement, be complied with in all respects by the party of the second part, [the owner]," impose on the latter personal liability to pay interest after the extended term of the mortgage. That is only the final clause of the proviso in paragraph 6, viz., that the mortgage holder agreed not to demand payment of the balance principal of said bond *during the extended term, provided* certain things were done. If not done, the mortgage holder could foreclose *before the expiration of the extended term;* but personal liability, beyond payment of the interest during the extended term, was not thereby assumed by the owner.

Both of those provisions were present in the mortgage extension agreement considered in *Fidelity-Phila. Trust Co. v. Land Title Bank & Trust Co.*, supra, and were construed by Mr. Justice LINN, supra, not to impose personal liability on the owner of the premises beyond its statutory liability for the taxes assessed while it was the owner.

Judgment affirmed.